UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-11615 RCL

MICHAEL SEALY,
    Plaintiff,

v.

G. CONWAY, INC.,
    Defendant.

## G. CONWAY, INC.'S RULE 26(a) DISCLOSURES

Pursuant to Fed. R. Civ. P. 26(a)(1) and Local Rule 26.2(A), the defendant, G. Conway, Inc. ("G. Conway"), makes the following disclosures. G. Conway reserves the right to supplement these initial disclosures either through subsequent disclosures, discovery or pre-trial submissions.

**A.**     **Individuals Likely To Have Discoverable Information**

1.     Michael Sealy, last known address at 301 Norwell Street, Dorchester, Massachusetts. As the Plaintiff, Mr. Sealy presumably has personal knowledge of his allegations against G. Conway.

2.     Robert Conway, business address at G. Conway, Inc., Eight Bunker Hill Industrial Park, P. O. Box 290273, Charlestown, MA 02129. Mr. Conway is the Vice-President of G. Conway, Inc. and has knowledge of G. Conway's business and the Plaintiff's employment at G. Conway, including his termination.

3.     Gerard Conway, business address at G. Conway, Inc., Eight Bunker Hill Industrial Park, P. O. Box 290273, Charlestown, MA 02129. Mr. Conway is the

President of G. Conway, Inc. and has knowledge of G. Conway's business and the Plaintiff's employment at G. Conway, including his termination.

4.   Mike Rygiel, Peabody, MA. Mr. Rygiel is the former General Manager of G. Conway and likely has information regarding G. Conway's business during the time of the Plaintiff's employment.

5.   Russell Bauser, business address at G. Conway, Inc., Eight Bunker Hill Industrial Park, P. O. Box 290273, Charlestown, MA 02129. Mr. Bauser is the Project Manager Estimator at G. Conway. Mr. Bauser has knowledge of the Plaintiff's complaint of discrimination lodged against him internally at G. Conway in or around July of 2001 and the investigation that followed. Mr. Bauser also has knowledge of G. Conway's business.

6.   George Moccia, Boston, MA. Mr. Moccia is the former Executive Vice-President and Controller of G. Conway. Mr. Moccia has knowledge of G. Conway's business during the period of the Plaintiff's employment. He also has knowledge of the Plaintiff's employment at G. Conway, including his termination.

7.   Kevin Interrante, business address at G. Conway, Inc., Eight Bunker Hill Industrial Park, P. O. Box 290273, Charlestown, MA 02129. Mr. Interrante is the Shop Foreman at G. Conway. He has knowledge of G. Conway's business at the time the Plaintiff was terminated.

8.   Michael Interrante, business address at G. Conway, Inc., Eight Bunker Hill Industrial Park, P. O. Box 290273, Charlestown, MA 02129. Mr. Interrante is a Truck Driver at G. Conway and has knowledge of G. Conway's business and particular use of trucks in its business.

ID # 453386v01/1268-113/ 12 23 2005

**B.      Description of Relevant Documents**

The documents that may be used to support G. Conway's claims and defenses consist of the following: (1) Plaintiff's personnel file; (2) documents reflecting G. Conway's receipt of the Plaintiff's complaint of discrimination in 2001 and the investigation it conducted into his complaint; (3) all pleadings related to the Plaintiff's Charge of Discrimination filed with the Equal Employment Opportunity Commission; (4) all documents related to the Plaintiff's receipt of unemployment compensation benefits during the relevant periods of time; (5) G. Conway's log of employees laid off and/or terminated in 2003; (6) G. Conway's company records; and (7) G. Conway reserves the right to supplement this response at a later time.

**C.      Damages Calculations**

G. Conway has not asserted any claims for damages. It has, however, asserted a request for relief under M.G.L. c. 231, §6F, for which it seeks its attorneys' fees, costs and expenses.

**D.      Insurance Agreements**

G. Conway has an insurance policy that may provide coverage with respect to the claims and defenses at issue in this case. A copy the policy is attached hereto as Exhibit A.

G. CONWAY, INC.,<br>
By its attorneys,<br>
<br>
_____<br>
Rosanna Sattler, BBO #442760<br>
Nancy J. Puleo, BBO #648457<br>
Posternak Blankstein & Lund LLP<br>
Prudential Tower<br>
800 Boylston Street<br>
Boston, MA  02199-8004<br>
(617) 973-6100

Dated: December 23, 2005

ID # 453386v01/1268-113/ 12.23.2005

## CERTIFICATE OF SERVICE

I, Nancy J. Puleo, Esquire of Posternak Blankstein & Lund LLP, hereby certify that on this 23 day of December, 2005 I caused a copy of the above to be served by first-class mail and electronic means to Andrew M. Abraham, Esq., Baker & Abraham, P.C., 30 Rowes Wharf, Boston, MA 02110.

Nancy J. Puleo

4

ID # 453386v01/1268-113/ 12.23.2005

EXHIBIT A

**MARKEL** **EVANSTON INSURANCE COMPANY**

Policy No.   EP-240005
Prev. No.    EP-230022
Prod. No.    13599

## DECLARATIONS - EMPLOYMENT PRACTICES LIABILITY INSURANCE POLICY

NOTICE: This is a Claims Made and Reported Policy. Except as otherwise stated in the Policy, this insurance is limited to liability for only those **Claims** that are first made against the Insured during the **Policy Period** or the Extended Reporting Period, if exercised, and reported to the Company during the **Policy Period** or the Extended Reporting Period, if exercised. Please read the Policy carefully.

1. **NAMED INSURED:** G. CONWAY, INC.

   **ADDRESS:** 8 BUNKER HILL INDUSTRIAL PARK
   CHARLESTOWN, MA 02124

2. **SIC CODE and DESCRIPTION:** 16 - Heavy Construction

3. **POLICY PERIOD:** From January 14, 2003 to January 14, 2004
   12:01 A.M. Standard Time at address of Insured stated above

4. **LIMITS OF LIABILITY:**
   The liability of the Company for each Claim including Claim
   Expenses under this Policy shall not exceed:                                    $ 1,000,000

   and, subject to that limit for each **Claim**, the total limit of the
   Company's liability for all **Claims** including **Claim** Expenses
   under this Policy shall not exceed in the aggregate:                            $ 1,000,000

5. **DEDUCTIBLE:**
   Applicable to each **Claim** (see definition of Deductible, see I.6.)           $     2,500

6. **INSURED'S CO-PAYMENT OBLIGATION:** 0%

7. **PREMIUM:**                                                                    $    10,355.00

   4% MA Surplus Lines Tax                                                                414.20

8. **RETROACTIVE DATE:** January 14, 1999

9. **ENDORSEMENTS ATTACHED AT POLICY INCEPTION:**
   1. EP-4010       Minimum Earned Premium Endorsement
   2. EP-4026       Amendment of Damages and Additional Exclusion

ALL CLAIMS TO BE REPORTED DIRECTLY TO

Shand Morahan & Company, Inc
Ten Parkway North, Suite 100
Deerfield, Illinois 60015
Phone: (847) 572-6000, Fax: (847) 572-6338

*Michael A. Rozenberg*
Authorized Representative

Policy Form: EP-2000 (5/00)
Dec: EP-1000 (5/00)
Date Printed: January 17, 2003



# EVANSTON INSURANCE COMPANY

## Endorsement

| | |
|---|---|
| Named Insured: | Policy No.: EP-240005 |
| G. CONWAY, INC. | Endorsement No.: 1 |
| | Effective Date: January 14, 2003 |

### MINIMUM EARNED PREMIUM ENDORSEMENT

In consideration of the premium charged, it is understood and agreed that in the event this Policy is cancelled by the Insured, the Policy premium is subject to a minimum earned premium of 25% of the total premium. The minimum 25% earned premium shall apply in all cases except cancellation at the direction of the Company.

All other terms and conditions remain unchanged

_Michael A. Rozenberg_
Authorized Representative

EP-4010 (4/00)

 **EVANSTON INSURANCE COMPANY**

## Endorsement

| | |
|---|---|
| Named Insured: G. CONWAY, INC. | Policy No.: EP-240005<br>Endorsement No.: 2<br>Effective Date: January 14, 2003 |

### AMENDMENT OF DAMAGES AND ADDITIONAL EXCLUSION

In consideration of the premium paid, it is hereby understood and agreed that the Policy is amended as follows:

1.  Section I. DEFINTIONS 3. is deleted and replaced with the following.

    3. "**Damages**" means the monetary portion of any judgment, award or settlement, including punitive damages where allowable by law, because of a **Wrongful Employment Practice**, but does *not* include: (1) loss of use or destruction of tangible or intangible business or personal property; (2) medical expenses for physical injury to a person's body; (3) compensation awarded or settlements determined to be owing for services rendered by an employee under an express contract of employment; (4) an express obligation to make payments, as severance pay or otherwise, in the event of termination; (5) the costs of complying with an injunction; or (6) the cost of providing reasonable accommodation under the Americans with Disabilities Act or similar state or local laws, including but not limited to, the construction or modification of facilities.

2.  Section IV. EXCLUSIONS is amended by the addition of the following exclusion:

    seeking damages or any other relief for breach of an express contractual obligation of the Insured with regard to monetary loans, the purchase or sale of stock or the sale or acquisition of an equity interest in the Insured.

All other terms and conditions remain unchanged.

*/s/ Michael A. Rozenberg*
Authorized Representative

EP-4026 (5/02)

# Employment Practices Liability Insurance Policy

## CONDITIONS PRECEDENT

**NOTICE: This is a Claims Made and Reported Policy. Except as otherwise stated in the Policy, this insurance is limited to liability for only those Claims that are first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised, and reported to the Company during the Policy Period or the Extended Reporting Period, if exercised. Please read the Policy carefully.**

As conditions precedent to the availability of any coverage under this Policy, the payment of the premium must be made when due, and the application attached hereto and all information in whatever form communicated by the Insured to the Company must be correct. Subject to this Policy's Declarations and all the terms of this insurance, the Company, and the Insured agree as follows:

## I. DEFINITIONS

1. **"Claim"** means any written charge or lawsuit, including a charge filed with the Equal Employment Opportunity Commission or similar state or local entity having jurisdiction over employment disputes, delivered to or served on the Insured seeking **Damages** or other relief for a **Wrongful Employment Practice**.

2. **"Claim Expenses"** means:

    (a) Reasonable amounts paid by the Insured with the prior written consent of the Company in the defense of that portion of any **Claim** for which coverage is afforded under the Policy, including lawyers' fees, costs of investigation, court costs, costs of attachment and similar bonds and costs of appeals, provided always that **Claim Expenses** does not include: (i) salary, wages, overhead or benefit expenses associated with employees or officials of the Insured; or (ii) salary, wages, administration, overhead, or benefit expenses, or charges of any kind or character whatsoever attributable to any in-house counsel or captive out-of-house counsel of the Insured;

    (b) Fees charged by any lawyer designated by the Company; all other fees and expenses resulting from the investigation, adjustment, defense and appeal of a **Claim** and incurred by the Company, and premiums on appeal bonds and premiums on bonds to release attachments in any **Claim** for an amount not in excess of the applicable Limit of Liability of this Policy. However, the Company shall have no obligation to apply for or furnish any such bonds, provided always that **Claim Expenses** shall not include salary charges of regular employees or officials of the Company or any supervisory counsel retained by the Company.

3. **"Damages"** means the monetary portion of any judgment, award or settlement, including punitive damages where allowable by law, because of a **Wrongful Employment Practice,** but does *not* include: (1) loss of use or destruction of tangible or intangible business or personal property; (2) medical expenses for physical injury to a person's body; (3) compensation awarded or settlements determined to be owing for services rendered by an employee under a written contract of employment; (4) an express obligation to make payments, as severance pay or otherwise, in the event of termination; (5) the costs of complying with an injunction; or (6) the cost of providing reasonable accommodation under the Americans with Disabilities Act or similar state or local laws, including but not limited to, the construction or modification of facilities.

4. **"Insured's Co-Payment Obligation"** means the Insured's obligation to pay on demand the percentage indicated in Item 6 of the Declarations of the total **Damages** for each **Claim**. The **Insured's Co-Payment Obligation** does not reduce the Limits of Liability.

5. **"Policy Period"** means the period from the inception date of this Policy to the Policy expiration date as stated in Item 3 of the Declarations, or its earlier cancellation or termination date, if any.

6. **"Deductible"** means that amount, as specified in Item 5 of the Declarations, of **Claim Expenses** that the **Insured** must pay with respect to any one **Claim**. The **Deductible** does not reduce the Limits of Liability.

EP-2000 (5/00) Page 1

7. **"Wrongful Employment Practice"** means conduct of an Insured with respect to a current, prospective or former employee that allegedly culminated in (i) wrongful termination (including constructive discharge) of an employee (ii) violation of any state, federal or local civil rights or anti-discrimination law and/or fair employment practices law (including, by way of example of federal laws, but not limited to Title VII of the Civil Rights Act of 1964 and the amendments thereto, the Age Discrimination in Employment Act and amendments thereto, and the Fair Labor Standards Act and amendments thereto, the Family Medical Leave act of 1992 and amendments thereto, the Uniform Services Employment and Re-employment Rights Act and amendments thereto, and the Fair Credit Reporting Act and amendments thereto), and/or (iii) commission of a common law tort arising out of and in the course of employment *except* to the extent that the tort allegedly results in **Bodily Injury** or property damage.

8. **"Bodily Injury"** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time, however, it does not include emotional distress, mental anguish or humiliation arising solely from a **Wrongful Employment Practice**.

## II.  INSUREDS

Each of the following is an Insured under this insurance to the extent set forth below:

1. The Named Insured is herein defined as the individual, partnership, or corporation named in the Declarations;

2. Any partner, officer, director, stockholder or employee of the Named Insured solely while acting within the scope of his duties as such;

3. Any former partner, officer, director, stockholder or employee of the Named Insured solely while acting within the scope of his duties as such;

4. The heirs, executors, administrators, assigns and legal representatives of each Insured above in the event of death, incapacity or bankruptcy;

5. Any new organization (other than a partnership or joint venture) that, during the **Policy Period**, is formed or acquired by the Named Insured and over which the Named Insured maintains majority ownership, but only with respect to **Claims** taking place after the date of formation or acquisition, as the case may be, PROVIDED THAT this insurance shall not apply to any **Claim** with respect to which such new or acquired organization is also an Insured under any other similar liability or indemnity policy or would be an Insured under any such policy but for the exhaustion of its limit(s) of liability or the application of a deductible or a self-insured retention provision.

## III.  COVERAGES

### 1.  *Claims Made and Reported Coverage*

Subject to the Limits of Liability, the **Deductible** and the **Insured's Co-payment Obligation** stated in the Declarations, we will pay on behalf of the Insured all **Damages** which the Insured shall become legally obligated to pay as a result of CLAIMS FIRST MADE AGAINST THE INSURED DURING THE **POLICY PERIOD** OR EXTENDED REPORTING PERIOD, IF PURCHASED, AND REPORTED IN ACCORDANCE WITH THE PROVISIONS OF VII. CLAIMS 1., Notice of Claim, by reason of any **Wrongful Employment Practice**,

PROVIDED ALWAYS THAT the entirety of such **Wrongful Employment Practice** happened:

(a) during the **Policy Period**; or

(b) subsequent to the Retroactive Date specified in the Declarations.

### 2.  *Defense, Investigation and Settlement of Claims*

The Company shall investigate and defend any **Claim** to which coverage under this Policy applies pursuant to the following provisions.

(a) **Claim Expenses** incurred in investigating and defending such **Claim** shall be included within the each **Claim** Limit of Liability set forth in the Declarations and shall not be in addition thereto.

Such **Claim Expenses** shall reduce the available Limit of Liability. THE COMPANY SHALL NOT BE OBLIGATED TO PAY ANY **DAMAGES** OR TO DEFEND OR TO CONTINUE TO DEFEND ANY **CLAIM** OR TO PAY **CLAIM EXPENSES** AFTER THE LIMIT OF THE COMPANY'S LIABILITY HAS BEEN TENDERED TO THE INSURED OR INTO THE COURT OR EXHAUSTED BY PAYMENT(S) OF **DAMAGES** AND/OR **CLAIM EXPENSES**.

(b) The Company shall select defense counsel. Provided, however, that if the law of the state of the Insured's domicile (as designated on the Declarations page) allows the Insured to control the selection of counsel where a conflict of interest has arisen between the Insured and the Company, the Company will provide a list of attorneys or law firms from which the Insured may designate counsel who shall act solely in the interest of the Insured, and the Insured agrees to direct such defense counsel to cooperate with the Company. Such cooperation shall include:

   (i) Providing on a regular basis, not less frequently than every six months, written reports on claimed **Damages**, potential liability, progress of any litigation, any settlement demands, or any investigation developments that materially affect the **Claim**;

   (ii) Providing any other reasonable information requested and fully itemized billing on a periodic basis;

   (iii) Cooperating with the Company and the Insured in resolving any discrepancies;

   and the fees and costs incurred by such counsel, including those fees and costs generated by cooperation with the Company, as set forth above, shall be included in **Claim Expenses**. Such **Claim Expenses** shall be included within the Policy Limits of Liability and not in addition thereto. Such **Claim Expenses** shall reduce the available Limits of Liability.

(c) The Insured shall cooperate with the Company in the defense, investigation and settlement of any **Claim**. The Insured will assist the Company in effecting any rights of indemnity, contribution or apportionment available to the Insured or the Company. Upon the Company's request, the Insured without charge to the Company shall: (i) submit to examination and interview by a representative of the Company, under oath if required; (ii) attend hearings, depositions and trials; (iii) assist in effecting settlement, securing and giving evidence, obtaining the attendance of witnesses in the conduct of suits; (iv) give a written statement or statements to the Company's representatives and meet with such representatives for the purpose of determining coverage and investigating and/or defending any **Claim**.

(d) The Insured shall not, with respect to any **Claim** covered under this Policy, except at the Insured's personal cost, make any payment, admit liability, settle any **Claim**, assume any obligation, agree to arbitration or any similar means of resolution of any dispute, waive any rights or incur **Claim Expenses** without prior written Company approval. Any costs and expenses incurred by the Insured without the prior written consent of the Company shall be borne by the Insured and will not constitute satisfaction of the **Deductible** amount or the **Insured's Co-Payment Obligation** either in whole or in part.

(e) The Company shall not settle any **Claim** without the consent of the Named Insured. If, however, the Named Insured shall refuse to consent to any settlement recommended by the Company and shall elect to contest the **Claim** or continue any legal proceedings in connection with such **Claim**, then the Company shall not be obligated to pay **Claim Expenses** incurred subsequent to such refusal. Furthermore, the Company's liability for such **Claim** shall not exceed the amount for which the **Claim** could have been so settled and **Claim Expenses** incurred up to the date of such refusal. Such amounts are subject to the provisions of VI., Limits of Liability, of this Policy.

3. *Extended Reporting Period*

If the Company cancels or non-renews this Policy, for reasons other than non-payment of premium or **Deductible** or non-compliance with the terms and conditions of this Policy, or the Named Insured cancels or fails to renew this Policy for any reason, the Named Insured, for an additional premium charge, shall have the right to extend the period during which **Claims** must be first made and reported to apply to CLAIMS FIRST MADE AGAINST THE INSURED DURING THE THIRTY-SIX (36) CALENDAR MONTHS immediately following the effective date of such cancellation or non-renewal and REPORTED IN ACCORDANCE WITH THE PROVISIONS OF VII. CLAIMS 1., Notice of Claim, provided that:

(a) The Extended Reporting Period applies only to **Wrongful Employment Practices** that occurred or were committed prior to the effective date of cancellation or non-renewal of this Policy and that are otherwise covered by this Policy; and

(b) The quotation of a different premium, **Deductible** or **Insured's Co-Payment Obligation**, Limit(s) of Liability and/or renewal terms for this Policy does not constitute a cancellation or refusal to renew for the purposes of this provision; and

(c) The full premium for this Policy and any amounts owed by the Insured for the **Deductible** or **Insured's Co-Payment Obligation** that are due have been paid by the Insured; and

(d) Written notice of intent to exercise this option and the premium for the Extended Reporting Period is received by the Company from the Named Insured within 10 calendar days of the effective date of cancellation or non-renewal. The premium for the Extended Reporting Period shall not exceed 150% of the full annual premium for this Policy; and

(e) Upon the purchase of the Extended Reporting Period, the entire premium therefore shall be deemed fully earned at its commencement, and in the event the Extended Reporting Period is terminated before its term for any reason, the Company shall not be liable for the return of any portion of the premium paid therefore; and

(f) The fact that this Policy may be extended by virtue of the Extended Reporting Period shall not in any way increase the applicable Limits of Liability set forth in the Declarations and described in VI., Limits of Liability; and

### 4. Discovery Clause:

If during the **Policy Period**, the Insured first becomes aware of a **Wrongful Employment Practice** which is reasonably expected to result in a **Claim** which falls within the scope of coverage of any part of this Policy, then the Insured may provide written notice to the Company containing the information listed below. If such written notice is received by the Company prior to the expiration of this Policy, then any **Claim** subsequently made against the Insured arising out of such **Wrongful Employment Practice** shall be deemed for the purpose of this insurance to have been made on the date on which such written notice is received by the Company. The Insured shall cooperate fully with the Company, and any investigation conducted by the Company or its representatives shall be subject to the terms set forth in this Policy as applicable to a **Claim**.

It is a condition precedent to the coverage afforded by this Discovery Clause that written notice be given to the Company containing the following information:

(a) the specific **Wrongful Employment Practice**;

(b) the date(s) of such conduct or injury or damage;

(c) the identity(ies) of the Insured(s) who may be the subject of such **Claim**;

(d) the identity(ies) of any potential claimant(s);

(e) the anticipated location(s) of any such **Claim**; and

(f) the circumstances by which the Insured first became aware of such potential **Claim**.

## IV. EXCLUSIONS

**This Policy does not apply to any Claim** or portion thereof made against the Insured:

1. based on conduct of the Insured or at the Insured's direction that is committed with wanton, willful, reckless or intentional disregard of any law or laws that is or are the foundation for the **Claim**, or with criminal or malicious purpose or intent; but this exclusion shall not apply to the strictly vicarious liability of any Insured for the wanton, willful, reckless or intentional disregard of another of any law or laws that is or are the foundation for the **Claim**;

2. for liability of others assumed under contract or agreement, unless such liability would have attached to the Insured even in the absence of such contract or agreement. However, this exclusion shall not apply to the Insured's contractual liability to indemnify an employment agency or employee leasing company for the **Wrongful Employment Practices** of the Insured toward such temporary or leased employees;

EP-2000 (5/00)                                    Page 4

3. arising under admiralty law, including the law of maintenance and cure, any Workers' Compensation, unemployment compensation, disability benefits or any similar state, federal or local law, or under United States Longshoremen's and Harbor Workers' Compensation Act (33 U.S.C. § 901 *et seq.*) and amendments thereto, the Jones Act (46 U.S.C. § 688 *et seq.*) and amendments thereto, or the Federal Employers' Liability Act (45 U.S.C. § 51 *et seq.*) and amendments thereto, but this exclusion shall not apply to an alleged retaliatory discharge for having asserted a claim thereunder;

4. arising under the National Labor Relations Act, Labor Management Relations Act (29 U.S.C. § 141 *et seq.*), or any similar state, federal or local law;

5. for damages pursuant to the Workers' Adjustment and Retraining Notification Act (29 U.S.C. § 2101 *et seq.*) or any similar state, federal or local law;

6. for insurance benefits that the claimant may have been entitled to receive pursuant to any state, federal or local law or regulation regarding the continuation of insurance after termination of employment, including but not limited to the Employee Retirement Income Security Act (ERISA) (29 U.S.C. § 1001 *et seq.*), except as such benefits are prayed for only as items of damage for a **Wrongful Employment Practice,** and this exclusion shall not apply to an alleged retaliatory discharge for having asserted a claim under ERISA;

7. arising out of any criminal proceedings;

8. that the Insured has reported to an insurer under any prior policy offering similar coverage to that provided under this Policy.

## V.  TERRITORY

The insurance afforded by this Policy applies to **Wrongful Employment Practices** taking place anywhere in the world if the **Claim** is brought within the United States, its territories and possessions or Puerto Rico.

## VI.  LIMITS OF LIABILITY

### 1. *Limits of Liability - Each Claim*

The Company shall be liable to pay **Claim Expenses** and **Damages**, in excess of the amount of the **Deductible** and the **Insured's Co-Payment Obligation**, up to the each **Claim** limit as stated in Item 4. of the Declarations for each **Claim** first made against the Insured during the Policy Period or Extended Reporting Period, if purchased, and reported in accordance with the provisions of VII. Claims 1., Notice of Claim

### 2. *Limit of Liability - Aggregate*

Subject to Section VI.1. above, the total liability of the Company for **Claim Expenses** and **Damages** shall not exceed the Policy aggregate limit as stated in Item 4. of the Declarations as a result of all **Claims** first made against the Insured during the **Policy Period** or Extended Reporting Period, if purchased, and reported in accordance with the provisions of VII. Claims 1., Notice of Claim.

### 3. *Multiple Insureds, Claims and Claimants*

The inclusion of more than one Insured in any **Claim** or the making of **Claims** by more than one person or organization shall not operate to increase the Limits of Liability. Two or more **Claims** arising out of a single **Wrongful Employment Practice** or a series of related **Wrongful Employment Practices** shall be treated as a single **Claim**. All such **Claims** whenever made shall be considered first made on the date on which the earliest **Claim** arising out of such **Wrongful Employment Practice** was first made and all such **Claims** are subject to the same Limit of Liability. Notwithstanding the foregoing, this section shall not apply to the **Deductible** which is applicable on an each claim basis.

## VII.  CLAIMS

### 1. *Notice of Claim*

If a **Claim** is made against the Insured, then the Insured, shall immediately forward to the Company every demand, notice, summons or other process received by the Insured, or by their representatives. In any

event, within sixty (60) days or sooner after the expiration of the **Policy Period** or the Extended Reporting Period, if purchased, such **Claim** must be reported to the Company.

### 2. Subrogation

In the event of any payment under this Policy, the Company shall be subrogated to the extent of such payment to all of the Insured's rights of recovery therefor against any person or entity, the Insured shall execute and deliver instruments and papers and take all necessary steps to secure such rights. The Insured shall do nothing to prejudice such rights.

Any amount so recovered, whether effected by the Company or by the Insured shall be applied net of the expense of such recovery as follows: (a) first, to the satisfaction of the Insured's payments for **Damages** and **Claim Expenses** which are in excess of the amount of the Limit of Liability under this Policy and which is in excess of any amount paid by any insurer under any other policy; (b) second, to the Company as reimbursement of amounts paid under this Policy; (c) third, to any insurer under any other policy as reimbursement of amounts paid under any such policy; and (d) fourth, to the Insured in satisfaction of any applicable **Deductible** and/or **Insured's Co-Payment Obligation** paid by the Insured.

### 3. Action Against the Company

No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all terms of this Policy, nor until the amount of the Insured's obligation to pay shall have been fully and finally determined, either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and the Company.

Any person or entity or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this Policy to the extent of the insurance afforded by this Policy.

Nothing contained in this Policy shall give any person or entity any right to join the Company as a co-defendant in any **Claim** against the Insured to determine the Insured's liability. Bankruptcy or insolvency of the Insured or of the Insured's estate shall not relieve the Company of any of its obligations hereunder.

### 4. False or Fraudulent Claims

If the Insured shall commit fraud in proffering any **Claim** as regards amount or otherwise, this insurance shall become void as to such Insured from the date such fraudulent **Claim** is proffered.

## VIII. GENERAL CONDITIONS

### 1. Notices to the Company

All notices to be given to the Company as required by this Policy shall be directed to Shand Morahan & Company, Inc., at the address stated in the Declarations page.

### 2. Cancellation

(a) This Policy may be canceled as an entirety by the Named Insured by surrender thereof to the Company or by mailing written notice to the Company, stating when thereafter such cancellation shall be effective. The mailing of notice, as aforesaid, shall be sufficient notice, and the effective date of cancellation stated therein shall become the expiration date of the **Policy Period**. Delivery of such written notice shall be equivalent to mailing.

(b) This Policy may be canceled as an entirety by the Company by mailing written notice to the Named Insured at the address stated in the Declarations stating when, not less than sixty (60) days thereafter, such cancellation shall be effective. However, if the Company cancels the Policy because the Named Insured has failed to pay a premium, **Deductible** or **Insured's Co-Payment Obligation** when due, this Policy may be canceled by the Company by mailing a written notice of cancellation to the Named Insured stating when, not less than ten (10) days thereafter, such cancellation shall be effective. The mailing of notice, as aforementioned, shall be sufficient notice and the effective date of cancellation stated in the notice shall become the expiration date of the Policy. Delivery of such written notice by the Company shall be equivalent to mailing.

(c) If this Policy is canceled pursuant to Item (a) above, the earned premium shall be computed at the customary short rate. If this Policy is canceled pursuant to Item (b) above, earned premium shall be computed pro-rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable thereafter, but payment or tender of unearned premium is not a condition precedent to cancellation.

### 3. Application

By acceptance of this Policy, the Insured agrees as follows:

(a) that the particulars and statements contained in the Application, a copy of which is attached hereto, and any material submitted therewith (which shall be on file with the Company and be deemed attached hereto), are true and are the basis of this Policy and are to be considered as incorporated into and constituting a part of this Policy;

(b) that the statements in the Application, or in any materials submitted therewith, are their representations; that they shall be deemed material to the acceptance of the risk or the hazard assumed by the Company under this Policy; and that this Policy is issued in reliance upon the truth of such representations.

### 4. Changes

Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the Company shall not effect a waiver or a change in any part of this Policy nor stop the Company from asserting any right under the terms of the Policy. The terms of this Policy shall not be waived nor changed, except by written endorsement issued to form a part of this Policy, and this Policy embodies all agreements existing between the Insured and the Company or any of its agents relating to this insurance.

### 5. Insured's Failure to Pay Deductible or Insured's Co-Payment Obligation

In the event that the Insured is unwilling and/or unable for any reason whatsoever, including but not limited to the insolvency or bankruptcy of such Insured, to pay or otherwise fund the **Insured's Co-Payment Obligation** and/or **Deductible**, under no circumstances shall the Company become liable therefore, regardless of whether or not the Insured has made or is able or willing to make payment of the **Insured's Co-Payment Obligation** and/or **Deductible**.

### 6. Other Insurance

This insurance shall be in excess of the amount of the **Deductible**, of the **Insured's Co-Payment Obligation** and of any other insurance available to the Insured whether the other insurance is stated to be primary, pro rata, contributory, excess, contingent or otherwise, unless the other insurance is written only as specific excess insurance over the Limits of Liability provided by this Policy.

### 7. Assignment of Interest

Assignment of interest under this Policy shall not bind the Company unless its consent is endorsed hereon.

### 8. Authorization

By acceptance of this Policy, the Insured confers upon the first Named Insured listed in Item 1. of the Declarations the exclusive authority to give and receive notices to and from the Company with respect to the exercise of the Extended Reporting Period; the cancellation of this Policy; the payment of premiums and **Deductible** and/or **Insured's Co-payment Obligation** when due; and the receiving of any return premiums that may become due under this Policy; and such Named Insured agrees to act on their behalf.

### 9. Integration of Document

All the provisions of this Policy are intended to be read together as one integrated document. No provision or any part thereof is intended to be separable from the balance of the Policy provisions. The meaning of each provision of this Policy is created by what is written in the balance of the Policy provisions, and the Company issues this Policy in contemplation of the foregoing method of giving meaning to the Policy.

If any provision of this Policy is held to be void by a court of competent jurisdiction, then the balance of the provisions of this Policy shall still be interpreted in accordance with the preceding paragraph.

## 10. Service of Suit

It is agreed that in the event of the failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the Named Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this clause constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon General Counsel, Legal Department, Shand Morahan & Company, Inc., Ten Parkway North, Deerfield, Illinois 60015 and that in any suit instituted against the Company upon this contract, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, the Company hereby designates the Superintendent, Commissioner, or Director of Insurance or other official specified for that purpose in the statute, or his/her successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Named Insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above-named counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

**IN WITNESS WHEREOF**, the Company has caused this policy to be signed by its President and Secretary, but this policy shall not be valid unless countersigned on the Declarations page by a duly authorized representative of the Company.

_____  
Secretary

_____  
President

# NUCLEAR ENERGY LIABILITY
# EXCLUSION ENDORSEMENT (BROAD FORM)

This endorsement modifies the provisions of this policy.

It is agreed that:

1. **This policy does not apply:**

    A. Under any Liability Coverage, to bodily injury or property damage

    (1) with respect to which an Insured under this policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

    (2) resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    B. Under any Medical Payments Coverage, or any Supplementary Payments provision relating to first aid, to expenses incurred with respect to bodily injury resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

    C. Under any Liability Coverage, to bodily injury or property damage resulting from the hazardous properties of nuclear material, if

    (1) the nuclear material (a) is at any nuclear facility owned by, or operated by or on behalf of, an Insured or (b) has been discharged or dispersed therefrom;

    (2) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

    (3) the bodily injury or property damage arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to property damage to such nuclear facility and any property thereat.

2. **As used in this endorsement:**

    "hazardous properties" include radioactive, toxic or explosive properties;

    "nuclear material" means source material, special nuclear material or by-product material;

    "source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

    "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

    "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any nuclear facility within the definition of nuclear facility under paragraph (a) or (b) thereof;

    "nuclear facility" means

    (a) any nuclear reactor,

    (b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

EP-2000 (5/00)    Page 9

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235.

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste.

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"property damage" includes all forms of radioactive contamination of property.